Ralph RICHARDSON, Plaintiff-Appellee,

v.

Janet RENO, Attorney General of the United States;  Doris Meissner, Commission, Immigration and Naturalization Service;  Robert Wallis, Acting District Director, Immigration and Naturalization Service; United States Immigration and Naturalization Service;  United States Department of Justice;  and Executive Office of Immigration Review, Defendants-Appellants.

No. 98-4230.

United States Court of Appeals,

Eleventh Circuit.

July 14, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 97-3799-CIV-EBD), Edward B. Davis, Chief Judge.

ON REMAND FROM THE UNITED STATES SUPREME COURT.

Before CARNES and HULL, Circuit Judges, and HENDERSON, Senior Circuit Judge.[*].

HULL, Circuit Judge:

This case is before us on remand from the Supreme Court.[1]  On June 1, 1999, the Court granted *certiorari* in this case, vacated our judgment, and remanded the case for further consideration in light of *Reno v. American-Arab Anti-Discrimination Committee,* --- U.S. ----, 119 S.Ct. 936, 142 L.Ed.2d 940, *pet. for reh'g denied,* --- U.S. ----, 119 S.Ct. 1498, --- L.Ed.2d ---- (1999).  *Richardson v. Reno,* --- U.S. ----, 119 S.Ct. 2016, --- L.Ed.2d ---- (1999).

I. PROCEDURAL UPDATE

After we issued *Richardson v. Reno,* 162 F.3d 1338 (11th Cir.1998) ("*Richardson I* "), the Supreme Court decided *American-Arab.*  Following *American-Arab,* Richardson asked us to recall our mandate.  On May 4, 1999, citing *Calderon v. Thompson,* 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), we noted that the Supreme Court has restricted the circumstances under which a court of appeals can recall its own

---

[*]This decision is rendered by a quorum, due to Judge Henderson's death on May 11, 1999.  28 U.S.C. § 46(d).

[1]We commend counsel for all parties for the excellent briefs filed promptly on remand.

mandate. However, recognizing the effect of *American-Arab* on our opinion in *Richardson,* we noted in a published order dated May 4, 1999, that "we would welcome ... an opportunity to revisit our decision in *Richardson v. Reno,* 162 F.3d 1338 (11th Cir.1998), in light of the Supreme Court's decision in" *American-Arab. Richardson v. Reno,* 175 F.3d 898 (11th Cir.1999).

On June 1, 1999, the Supreme Court granted *certiorari* in this case, vacated our judgment, and remanded the case for further consideration in light of *American-Arab. Richardson v. Reno,* --- U.S. ----, 119 S.Ct. 2016, --- L.Ed.2d ---- (1999). After review, we reaffirm the holding in *Richardson I* that IIRIRA's amendments to the INA preclude § 2241 habeas jurisdiction over Richardson's petition challenging his removal proceedings, which commenced after IIRIRA's effective date and his denial of bond and parole by the INS District Director without an individualized hearing before the immigration judge. In support of this holding, we readopt and reaffirm the reasoning in *Richardson I* except to the extent it relied on INA § 242(g) to support its holding. As discussed below, we find that IIRIRA's amendments to the INA, independently of § 242(g), channel judicial review of the INS' detention of Richardson and other issues in his removal proceedings exclusively into the judicial review provided under the INA. *See American-Arab,* --- U.S. at ----, 119 S.Ct. at 943.

## II. DISCUSSION

In *Richardson I,* we held that IIRIRA repeals district-court jurisdiction to issue writs of habeas corpus under § 2241 to aliens challenging their removal from the United States or their detention while awaiting

removal. 162 F.3d at 1378-79.[2]  In reaching this conclusion, we emphasized INA § 242(g), which provides that,

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g) (Supp.1998).  We reasoned in *Richardson I* that this "sweeping language" illustrated congressional intent to consolidate the judicial review of removal proceedings into the INA's judicial-review scheme, and that INA § 242(g) "expressly repeals any and all jurisdiction except that conferred by INA § 242" including § 2241 habeas jurisdiction.  162 F.3d 1358-59.

The Supreme Court's decision in *American-Arab* holds that INA § 242(g) does not apply to the "universe of deportation [or removal] claims."  119 S.Ct. 943.  The Court in *American-Arab* narrowly construed INA § 242(g) as applying only to these three discrete actions described in INA § 242(g):  the "decision or action" to (1) "commence proceedings," (2) "adjudicate cases," or (3) "execute removal orders." --- U.S. at ----, 119 S.Ct. at 943.  Richardson's § 2241 petition does not involve any of these three discrete actions.  Therefore, in light of *American-Arab,* we find that INA § 242(g) does not apply in this case.

Importantly, however, our holding in *Richardson I* did not rest exclusively on INA § 242(g).  Instead, we concluded that the extensive revisions to the judicial review of removal proceedings enacted by IIRIRA and the AEDPA, viewed together, repealed § 2241 jurisdiction over petitions challenging removal

---

[2]At the outset, we note that *Richardson* remains one of the few circuit court decisions where only post-IIRIRA law, as opposed to the transition rules, applies.  This is so because Richardson's removal proceedings began in October 1997 after IIRIRA's effective date.  Most of the circuit decisions addressing the issue whether IIRIRA's amendments to the INA repeal § 2241 jurisdiction over deportation or exclusion proceedings involve immigration proceedings initiated before IIRIRA, and thus only IIRIRA's transitional provisions apply, and they do not involve the full, and extensive, revisions to the INA's judicial review scheme enacted by INA § 242.  *See, e.g. Mayers v. INS,* 175 F.3d 1289 (11th Cir.1999); *Mustata v. United States Dept. of Justice,* --- F.3d ---- (6th Cir.1999);  *Sandoval v. Reno,* 166 F.3d 225, 228 (3d Cir.1999);  *Goncalves v. Reno,* 144 F.3d 110, 122 (1st Cir.1998), *cert. denied,* --- U.S. ----, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999);  *Henderson v. INS,* 157 F.3d 106, 109 (2d Cir.1998), *cert. denied,* --- U.S. ----, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999);  *Jean-Baptiste v. Reno,* 144 F.3d 212, 219-20 (2d Cir.1998).

proceedings. In particular, we relied on the overall judicial review scheme enacted in INA § 242(b). We did cite INA § 242(g) as an expression of congressional intent to streamline and consolidate the judicial review of immigration matters. However, in addition to INA § 242(g), we relied on such provisions as the AEDPA's repeal of habeas under former INA § 106(a)(10) and the express provision for limited habeas jurisdiction created by INA § 242(e)(2). *Richardson,* 162 F.3d at 1358 ("[T]he elimination of INA § 106(a)(10)'s habeas corpus review by the AEDPA further evidences congressional intent to preclude statutory habeas corpus review over immigration decisions."); *Id.* at 1357 (noting that "INA § 242(e)(2) provides for statutory habeas review under the INA in this narrowly limited situation. This evidences Congress' ability to create statutory habeas review under the INA when it so desires."). Furthermore, we noted that "INA § 242(b)(2) provides that the venue for judicial review is only in the court of appeals." *Id.* at 1354.

More specifically, in *Richardson,* we also relied on INA § 242(b)(9) in support of our conclusion. We noted that INA § 242(b)(9) consolidates the time and manner of judicial review of "all questions of law and fact" in removal proceedings:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this chapter shall be available only in judicial review of a final order under this section.

*Richardson,* 162 F.3d at 1354 (quoting 8 U.S.C. § 1252(b)(9)(Supp.1998)). INA § 242(b)(9) instructs that "all questions of law and fact" includes all "interpretations and application of constitutional and statutory provisions." *Id.* In *Richardson I,* we also recognized that INA § 242(b)(9) provides clear evidence of Congress' desire to "abbreviat[e] judicial review to one place and one time: only in the court of appeals and only after a final removal order and exhaustion of all administrative remedies." 162 F.3d at 1354; *see also* 162 F.3d at 1373 ("In addition to retaining a mandatory exhaustion provision, IIRIRA added INA § 242(b)(9) which now expressly provides that judicial review is available of only 'a final order.' ").[3] In *Richardson I,*

---

[3]INA § 242(d)(1) mandates exhaustion and states:

> (d) REVIEW OF FINAL ORDERS.—A court may review a final order of removal only

we also reasoned that INA § 242(b)(9), and not just INA § 242(g), clarified the restriction on the judicial review of immigration decisions:

> INA § 242(g), along with INA § 242(b)(9), should be properly understood not as an attempt to divest the courts of jurisdiction they previously possessed, but as Congress' effort to make absolutely clear what should have been apparent under the INA and AEDPA all along:  that review of INS' conduct of deportation proceedings is available only after the entry of a final order of deportation, and only under the INA provisions specifically provided for that purpose.

162 F.3d at 1358.

Similarly, the Supreme Court in *American-Arab,* albeit in dicta, described the text of § 242(b)(9) as a "general jurisdictional limitation."

> We are aware of no other instance in the United States Code in which language such as this [§ 242(g)] has been used to impose a general jurisdictional limitation;  and that those who enacted IIRIRA were familiar with the normal manner of imposing such a limitation is demonstrated by the text of § 1252(b)(9) [INA § 242(b)(9) ], which stands in stark contrast to § 1252(g) [INA § 242(g) ].

--- U.S. at ----, 119 S.Ct. at 943.  The Court then characterized INA § 242(b)(9) as an "unmistakable 'zipper clause' " that "channels judicial review" of INS "decisions and actions" exclusively into the judicial review provided under the INA. *Id.*

The Supreme Court defined the effect of the "zipper clause:" "[I]t is a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.' " *Id.* at 943.  As the Supreme Court stated, INA § 242 was intended to assure that issues of law and fact are not subject to "separate rounds of litigation." *Id.* at 944.

Thus, after review of *American-Arab* and the parties' supplemental briefs on remand, we reaffirm our holding that IIRIRA precludes § 2241 habeas jurisdiction over an alien's petition challenging his removal proceedings and detention pending removal proceedings.  Judicial review of the issues raised in Richardson's

---

if—

> (1) the alien has exhausted all administrative remedies available to the alien as of right, ...

8 U.S.C. § 1252(d).

5

§ 2241 petition must await a final BIA removal order and can occur in the court of appeals through a petition to review that final order. We reach this conclusion for reasons similar to those outlined in *Richardson I* except that we rely on INA § 242(b)(9), rather than INA § 242(g), as the expression of congressional intent to preclude § 2241 jurisdiction in this situation. Thus, we find that the "unmistakable zipper clause" of INA § 242(b)(9), along with the overall revisions to the judicial review scheme enacted by INA § 242 *et seq.,* constitute a sufficiently broad and general limitation on federal jurisdiction to preclude § 2241 jurisdiction over challenges to removal orders, removal proceedings, and detention pending removal. *See American-Arab,* --- U.S. at ----, 119 S.Ct. at 943; *Richardson I,* 162 F.3d at 1358 (reasoning that a broad jurisdictional limitation can satisfy the requirements of *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)).

Furthermore, for all the reasons discussed in *Richardson I,* we conclude that IIRIRA's limitation on § 2241 habeas jurisdiction is not unconstitutional on its face or as applied to Richardson in this case. *Richardson,* 162 F.3d at 1378-79 ("This repeal also does not violate the Suspension Clause. INA § 242(a)(2)(C) does not remove all judicial review. At a minimum, judicial review remains available to Richardson under INA § 242(a)(2)(C) to determine if the specific conditions exist that bar jurisdiction in the court of appeals. If the bar applies, jurisdiction remains to consider whether the level of judicial review remaining in INA § 242(a)(2)(C) in a particular case satisfies the Suspension Clause. If not, Richardson can pursue adequate and effective judicial review of statutory and constitutional issues under INA §§ 242(b)(2) and 242(b)(9).").[4]

---

[4]Developments in Richardson's ongoing removal proceedings that occurred after *Richardson I* illustrate why Congress in IIRIRA precluded this collateral § 2241 proceeding and channeled judicial review exclusively to the review provided under the INA and why courts should not intervene until the administrative process is completed. Concurrent with this proceeding, Richardson appealed the immigration judge's removal order to the BIA and on May 5, 1999, the BIA sustained certain findings of the immigration judge but remanded Richardson's case for further proceedings regarding the nature of Richardson's state criminal conviction, whether it constituted an aggravated felony, and its effect on Richardson's immigration status. These developments also exemplify that the exhaustion of remedies requirement is an appropriate method of conserving judicial resources and permitting the agency to correct any mistakes along the way.

Our earlier conclusion in *Richardson I*—that IIRIRA's limitation on § 2241 jurisdiction is constitutional—is fortified by this Court's subsequent decision in *Lettman v. Reno,* 168 F.3d 463, 465-66 (11th Cir.1999). Citing with approval cases that we relied on in our original opinion in *Richardson I,* this Court, in *Lettman,* held that when the government invokes IIRIRA § 309(c)(4)(G), which limits judicial-review very much like INA § 242(a)(2)(C), this Court exercises jurisdiction to determine whether the alien is actually deportable. *Lettman,* 168 F.3d at 465 (citing with approval *Yang v. INS,* 109 F.3d 1185 (7th Cir.1997), and *Okoro v. INS,* 125 F.3d 920 (5th Cir.1997)). Thus, *Lettman* establishes that, even when an alien faces a putative bar to judicial review like IIRIRA § 309(c)(4)(G), the alien still receives substantial judicial review. *Lettman* 's holding is consistent with and buttresses our observation in *Richardson I* that if the government invokes INA § 242(a)(2)(C), this Court will determine whether Richardson is actually an alien, is deportable, and deportable for a reason covered by INA § 242(a)(2)(C). *Richardson,* 162 F.3d at 1376 ("Thus, we find that the INA still assures Richardson a significant degree of judicial review in the court of appeals after a final removal order, despite INA § 242(a)(2)(C).... Any constitutional infirmities Richardson perceives in that INA-proscribed judicial review must be raised in an attack on the constitutionality of INA § 242(a)(2)(C) only in the court of appeals and only after a final removal order.")[5] Indeed, the fact that in *Lettman* this Court extensively analyzed the statute invoked by the INS in charging the alien with deportability, concluded that the alien was not deportable, and vacated the alien's deportation order, illustrates the extent, and effectiveness, of the judicial review available even when the government invokes INA § 242(a)(2)(C) or IIRIRA § 309(c)(4)(G).

The constitutional adequacy of the judicial review available when INA § 242(a)(2)(c) applies will not be decided unless or until Richardson attempts to pursue a petition for judicial review under INA §

---

[5]Additionally, we note that INA § 242(a)(2)(C) deals with operational decisions by the INS and does not foreclose constitutional challenges to the statute itself or other substantial constitutional issues from being raised in the court of appeals. Such challenges might include any potential constitutional issues regarding Richardson's detention pending his removal proceedings. *See Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *LaGuerre v. Reno,* 164 F.3d 1035, 1041 (7th Cir.1998).

7

242(b). However, at this interim stage, Richardson clearly has not shown that he is unable to secure full adequate and effective judicial review, especially in light of the judicial review recognized by this Court in *Lettman*.[6]

Lastly, we address Richardson's contention that § 2241 jurisdiction remains to challenge his detention, even if post-IIRIRA he can seek judicial review of the other issues in his removal proceedings only under the INA.[7] Richardson's § 2241 petition raised several substantive challenges to his removal proceedings, such as whether the INS properly considered him as an "arriving alien." According to Richardson, even if INA § 242 precludes § 2241 jurisdiction over those issues, INA § 242 does not apply to

---

[6]We recognize that this Court recently held that the AEDPA's repeal of habeas under former INA § 106(a)(10), as amended by IIRIRA § 309(c)(4)(G), did not repeal § 2241 jurisdiction over challenges to deportation proceedings. *Mayers v. INS,* 175 F.3d 1289, 1298 (11th Cir.1999). However, *Mayers* was decided under IIRIRA's transitional rules. *Id.* at 1293. Therefore, most of IIRIRA's revisions to the INA, particularly INA § 242(b)(9), did not apply in *Mayers.* Indeed, this Court in *Mayers* emphatically noted several times that the holding in *Mayers* did not conflict with *Richardson I* because IIRIRA's permanent provisions applied in *Richardson I. Id.* at 1297.

> This Court in *Mayers* further stressed that the aliens facing deportation in *Mayers* were subject to a final deportation order, whereas Richardson is challenging his detention while his removal proceedings remain pending. Before seeking habeas relief, the aliens in *Mayers* had exhausted all available administrative remedies and had sought, but been denied, all judicial review in the court of appeals in a two-sentence unpublished order issued prior to this Court's decision in *Lettman v. Reno,* 168 F.3d 463 (11th Cir.1999). Thus, three elements were crucial in *Mayers:* (1) the aliens were subject to a final deportation order after BIA review; (2) the aliens first had filed a petition for judicial review under the INA in the court of appeals *before* filing a § 2241 petition; and (3) the aliens had been unable to obtain any judicial review whatsoever in the court of appeals. Additionally, while the criminal aliens in *Mayers* had been unable to obtain any judicial review in the court of appeals, it is now clear in this Circuit that criminal aliens, post-*Lettman,* will be able to obtain judicial review of whether they are aliens and deportable. For these reasons, the holding in *Mayers* does not affect our holding in this case; indeed, *Mayers* actually illustrates why the appropriate avenue for judicial review here lies not under § 2241 but in the review provided under the INA.

[7]Richardson stresses that his detention has lasted twenty months. However, the time that Richardson was detained before his plenary removal hearing before the immigration judge was only two and one-half months. Richardson was arrested on October 26, 1997; the INS initiated removal proceedings against him on October 26, 1997, and the immigration judge conducted the plenary removal hearing and issued a removal order on January 8, 1998. Moreover, Richardson's detention is not entirely beyond his control; he is detained only because of the removal proceedings, and he may obtain his release any time he chooses by withdrawing his application for admission and leaving the United States.

the INS' detention decisions in his case because detention always has been considered a separate and distinct matter from a removal proceeding. Richardson concedes that his § 2241 petition does not seek review of the INS District Director's discretionary decision regarding bond or parole.[8] Instead, the detention and parole issues in Richardson's § 2241 petition involve mainly whether the INS properly detained Richardson as an "arriving alien" and whether the denial of bond and parole by the INS District Director, without a subsequent individualized hearing before an immigration judge, violated Richardson's constitutional rights.[9]

---

[8]As outlined in detail in *Richardson I,* Richardson's attorney initially requested bond and parole for Richardson by filing affidavits and supporting information with the INS District Director. After review, the District Director denied the bond request finding that Richardson would have no incentive to appear for immigration hearings. The District Director also denied parole on the basis that Richardson had not established a significant public benefit or urgent humanitarian reasons. *See Richardson I* at 1349.

[9]On appeal, Richardson also asserts that the mandatory detention rules in INA § 236(c)(1) are unconstitutional. Those rules did not become effective until October 1998 during the pendency of this appeal, and thus Richardson necessarily has been unable to amend his § 2241 petition to include those claims. More importantly, there is no *evidence* in this record to date that the INS has sought to apply those mandatory detention rules retroactively to Richardson. A question arises whether the INS would need to apply those rules to Richardson who already is being detained, has had an opportunity to seek bond and parole, and was denied both bond and parole. Indeed, Richardson does not contend that the INS District Director abused his discretion in denying him bond and parole, but only that Richardson should not be considered an "arriving alien" and should have received a subsequent hearing before an immigration judge.

    If the INS subsequently did seek to apply the mandatory detention rules to him, Richardson argues strenuously that INA § 236(c)(1) does not apply to him because it applies only to persons released to the INS before completion of their criminal sentence and not to aliens, like Richardson, who completed their criminal sentence many years before. In short, at this juncture, we find that the statutory issue of whether the mandatory detention rules apply to Richardson and, if so, the issue of whether the mandatory detention rules are constitutional are not properly before this Court. Thus, we need not decide whether jurisdiction exists over any claims regarding the mandatory detention rules in § 236(c)(1). We do note that the only circuit to address the issue has upheld the constitutionality of the mandatory detention rules in INA § 236(c)(1). *Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999); *see also Richardson I,* 162 F.3d at 1358 n. 100. The Seventh Circuit made this observation in the context of a § 2241 petition, but the INS in *Parra* did not raise INA § 242(b)(9) to support its position that the district court lacked jurisdiction. 172 F.3d at 957. In addition, the Seventh Circuit in *Parra* did not discuss the effect of INA § 242(b)(9) on the district court's § 2241 jurisdiction. *Compare LaGuerre v. Reno,* 164 F.3d 1035, 1040 (7th Cir.1998) (holding that district-court jurisdiction "did not survive the enactment" of the AEDPA).

We find that Richardson's statutory and constitutional claims regarding his detention are clearly encompassed within INA § 242(b)(9).[10] That provision is not limited to any particular form of proceeding; rather it applies to "any action taken or proceeding brought to remove an alien." 8 U.S.C. § 242(b)(9).[11] "Any action taken" in INA § 242(b)(9) encompasses detention as the first step in the removal process. 8 U.S.C. 1252(b)(9). Indeed, the Supreme Court previously has found that detention is "necessary to give effect to the provisions for the exclusion or expulsion of aliens...." *Wong Wing v. United States,* 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896); *see Carlson v. Landon,* 342 U.S. 524, 538, 72 S.Ct. 525, 96 L.Ed. 547 (1952). The relationship of detention to removal proceedings is underscored by congressional findings that criminal aliens, with great regularity, fail to show for their immigration proceedings. *See e.g.,* S.Rep. No. 104-48 (Apr. 7, 1995). Thus, the plain language of INA § 242(b)(9) applies to detention proceedings insofar as they arise from the removal proceedings. Accordingly, Richardson's careful attempt to cast his § 2241

---

[10]Richardson argues that INA § 236(e) is the sole post-IIRIRA INA provision applicable to judicial review of his detention and that INA § 242 does not apply at all in this case. However, we find that both INA §§ 236(e) and 242 apply to INS detention decisions in Richardson's ongoing removal proceedings. The two sections are not inconsistent but complement each other. Section 242 channels judicial review to the court of appeals under the INA, and within that judicial review § 236(c) prescribes that discretionary bond decisions are not reviewable.

    The INS argues that even though Richardson does not contend the INS District Director abused his discretion in denying him bond, Richardson's claim that the Attorney General impermissibly delegated bond decisions for "arriving aliens" to the District Director and not an immigration judge constitutes a challenge to a discretionary decision of the Attorney General not subject to judicial review under § 236(e). Since we hold that there is no subject matter jurisdiction over Richardson's § 2241 petition as a result of INA § 242, *et seq.,* and particularly § 242(b)(9), we do not address this § 236(e) issue but note that the scope of the judicial review bar in § 236(e), similar to the judicial review limitations in § 242(a)(2)(C), are matters to be addressed only in a petition for judicial review in the court of appeals and only after a final removal order.

[11]By contrast, former INA § 106(a) was limited to final orders based on proceedings under former 8 U.S.C. § 1252(b) (1994). 8 U.S.C. § 1105a(a) (1994). Under that scheme, "final orders" included "all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing." *INS v. Chadha,* 462 U.S. 919, 938, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). Detention determinations, on which deportation proceedings were not contingent, fell outside of "final orders of deportation" and were held under INA § 242(a), not INA § 242(b). *Cheng Fan Kwok v. INS,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). New INA § 242, however, omits any limitation to a particular form of proceeding. 8 U.S.C. § 1252(a).

petition as a challenge to detention while alleging that he is not in fact removable on the charged grounds does not take that challenge outside of the scope of INA § 242(b)(9).[12]

Accordingly, we reaffirm and reinstate our opinion in *Richardson I* except for the aspects of the opinion that relied on INA § 242(g). We REVERSE the decision of the district court, VACATE the stay of Richardson's removal order, and direct the district court to dismiss Richardson's § 2241 petition for lack of subject matter jurisdiction.

---

[12]Richardson also stresses that § 2241 jurisdiction must exist over bond claims or otherwise they will be always mooted. That is not so. If Richardson becomes subject to a final BIA removal order and then files a petition for judicial review in this Court, he will remain detained until he is actually removed from the United States. Thus, Richardson will be detained during his petition for judicial review in this Court and any subsequent review by the Supreme Court, and his bond claim will not be mooted. There is no reason why a bond claim cannot or will not be decided before any other issues in the case. Although not required to do so, a court of appeals could address any bond issue early in the appeal before the issues relating to the removal order itself are decided or even briefed.